# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| MT "BALTIC SOUL" PRODUKTENTANKSCHIFFAHRTSGESELLSCHAFT MBH& CO. KG and NORIENT PRODUCT POOL APS,<br><br>Plaintiffs,<br><br>v.<br><br>TADEMA SHIPPING & LOGISTICS INC., TALEVERAS GROUP OF COMPANIES LIMITED, TALEVERAS PETROLEUM TRADING BV and TALEVERAS PETROLEUM TRADING DMCC,<br><br>Defendants. | CIVIL CASE NO.:<br><br>**VERIFIED COMPLAINT** |

Plaintiffs, MT "Baltic Soul" Produktentankschiffahrtsgesellschaft mbH& Co. KG ("Baltic Soul") and Norient Product Pool APS ("Norient") (collectively, "Plaintiffs"), as and for their Verified Complaint against Defendants Tadema Shipping & Logistics Inc. ("Tadema"), Taleveras Group of Companies Limited ("Taleveras Group"), Taleveras Petroleum Trading BV ("Taleveras BV") and Taleveras Petroleum Trading DMCC ("Taleveras DMCC") (collectively, "Defendants"), allege upon information and belief as follows:

## Jurisdiction and Venue

1. This is a case of admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Supplemental jurisdiction exists over Plaintiffs' cause of action pursuant to 10 Del. C. § 3507 because the claims asserted in that cause of action are so related to the claims asserted in this action under the Court's original jurisdiction that they form the same case or controversy under Article III of the United States Constitution.

2. Defendants cannot be found within this District within the meaning of Supplemental Admiralty Rule B.

3. Venue is properly situated in this District because Defendants' property is, or soon will be, in the possession, custody, and control of Garnishees within this District.

**The Parties**

4. Baltic Soul was and is a foreign business entity duly organized and existing under the laws of a foreign country with an address and principal place of business in Germany. At all times relevant to this action, Baltic Soul was the owner of the M/T BALTIC SOUL ("the Vessel").

5. Norient was and is a foreign business entity duly organized and existing under the laws of a foreign country with an address and principal place of business in Denmark. At all times relevant to this action, Norient acted as agents for Baltic Soul and as the commercial operator of the Vessel.

6. At all times relevant to this action, Defendant Tadema was and still is a foreign business entity organized and existing under the laws of Anguilla and had its principal place of business at 212, Long Path Road, Suite 29, Anguilla, BVI.

7. At all times relevant to this action, Tadema was the time charterer of the Vessel and itself an alter ego of the Taleveras Group, which is controlled by Nigerian billionaire Igho Charles Sanomi III ("Sanomi").

8. At all times relevant to this action, Defendant Taleveras Group was and still is a foreign business entity organized and existing under the laws of Nigeria with a registered office at 13B Katsina-Ala Crescent, Maitama, Abuja, Nigeria.

9. At all times relevant to this action, Defendant Taleveras BV was a foreign business entity organized under the laws of Anguilla with a registered office at 212 Long Path Road, Suite 29, Anguilla, BVI.

10. At all times relevant to this action, Taleveras BV was an alter ego of the Taleveras Group which is controlled by Nigerian billionaire Sanomi.

11. At all times relevant to this action, Defendant Taleveras Petroleum DMCC was and still is a foreign business entity organized under the laws of Dubai with a registered office at Level 27 Office E, PO Box 124117, Jumeirah Lakes Towers, Dubai UAE.

12. At all times relevant to this action, Taleveras DMCC was the alter ego of Tadema and/or Taleveras BV, and itself an alter ego of the Taleveras Group, which is controlled by Nigerian billionaire Sanomi.

## Background

**A. The BALTIC SOUL Charter Party.**

11. By a charter party dated September 9, 2014 and subsequent novations dated September 22, 2014 and September 24, 2014, Baltic Soul, as owner of the Vessel, entered into a voyage charter party with Tadema for the carriage of a cargo of Nigerian Grade Unleaded Gasoline from Antwerp, Belgium to Lagos, Nigeria (the "Charter Party"). True and correct copies of the Charter Party and novations are attached as **Exhibit 1**.

12. Tadema's performance under the Charter Party was fully guaranteed by "Taleveras." *See* **Exhibit 1**.

13. Taleveras Group was subsequently substituted as charterers pursuant to a novation dated September 22, 2014. *See* **Exhibit 1**.

14. The Vessel is entered in a pool of vessels and is commercially operated by Norient on behalf of her owner Baltic Soul pursuant to a pooling agreement.

15. Plaintiffs duly delivered the vessel to Tadema/Taleveras Group and duly performed all of their obligations in accordance with the terms of the Charter Party.

16. Despite due demand, Tadema and Taleveras Group refused or otherwise failed to pay certain undisputed sums due and owing to Baltic Soul under the Charter Party, including freight in the sum of USD $929,360.96, demurrage (charges for additional time used by charterer beyond that allowed for loading/discharging the vessel) in the sum of USD $1,101,067.50, high risk area bonuses for officers and ratings in Nigeria in the sum of USD $55,251.50, and additional war risk premium in Nigeria in the sum of USD $19,407.40.

17. The total outstanding balance of all claims amounts owed by Tadema and Taleveras Group amounted to USD $2,105,087.36.

18. On February 24, 2015, Baltic Soul and Norient informed Tadema and Taleveras Group that unless payment of the aforesaid amounts was received within seven days of that date proceedings would be commenced in the High Court of London (pursuant to the terms of the Charter Party and novations) for recovery of the sums due. A true and correct copy of this notice is attached as **Exhibit 2**.

19. On March 3, 2015, Alex School, Manager of the Legal Department for Taleveras Group, sent an email to counsel for Baltic Soul/Norient (with copy to Emeka Ofia (believed to be the Senior Manager of Operational Finance and Contracts Department at Taleveras Group)), Efe Sanomi and legal@taleverasgroup.com), stating, *inter alia*, "[k]indly note that the said claim is not in dispute and we are committed to full settlement

of your claim to bring this transaction to a logical end. Be advised that payment will be made on the 17th March 2015 in this regard and we will revert with payment confirmation." (emphasis added). A true and correct copy of this email is attached as **Exhibit 3**.

20. On March 5, 2015, Plaintiffs, Tadema and Taleveras Group entered into an agreement to resolve the outstanding and admitted debt pursuant to which Tadema and Taleveras Group agreed to pay to Plaintiffs: USD $2,105,087.30, representing the outstanding freight, demurrage, high risk area bonuses and additional war risk premium, plus accrued interest in the amount of USD $31,576.31 (calculated at the rate of 4.5% from November 18, 2014 up to March 17, 2015), for a total payment of USD $2,136,663.60 (the "Agreement"). A true and correct partially redacted copy of the Agreement is attached as **Exhibit 4**.

21. Pursuant to Clause 3 of the Agreement, Tadema and Taleveras Group were required to remit all amounts due and owing on or before March 17, 2015. *See* **Exhibit 4**.

22. In addition to the aforesaid payment, under Clause 2 of the Agreement Tadema and Taleveras Group agreed to pay Plaintiffs' legal and other costs incurred in pursuing the admitted debt.

23. Despite due demand, Tadema and Taleveras Group failed to pay the sums due to Plaintiffs in further breach of the Charter Party and in breach of the Agreement.

24. Owing to the breach of the Charter Party and Agreement by Tadema/Taleveras Group, on March 30, 2015, Plaintiffs commenced a proceeding before the English High Court of Justice, Commercial Court, seeking recovery of the sums due under the Charter Party and Agreement, plus additional interest and costs (the "High Court Proceedings").

25. The High Court Proceedings were brought within the admiralty jurisdiction of the English High Court.

26. Following the commencement of the High Court Proceedings, on July 8, 2015, Taleveras Group remitted a payment to Plaintiffs in the amount of USD $929,360.96 in partial satisfaction of the sums due under the Charter Party and Agreement.

27. Despite due demand, Tadema/Taleveras Group have refused or otherwise failed to pay any portion of the remaining balance due to Plaintiffs under the Charter Party and Agreement.

28. On June 10, 2015, the English High Court of Justice, Commercial Court, issued an Order granting Plaintiffs' application for summary judgment against Tadema and Taleveras Group (the "Summary Judgment Order"), a copy of which is attached hereto as **Exhibit 5**, awarding Plaintiffs the following:

   a) the principal sum of USD $1,207,302.64 plus accrued interest in the sum of USD $13,068.24 to the date of the Judgment;

   b) £12,500 plus accrued interest in the sum of £89.04 (equal to $16,343.53 based on conversion rate from English Pound to U.S. Dollar as of September 21, 2016); and

   c) Plaintiffs' costs in the High Court Proceedings in the sum of £32,500 (equal to USD $42,192.64 based on conversion rate from English Pound to U.S. Dollar as of September 21, 2016).

29. Under English law, post-judgment interest continues to run at the rate of 8% per annum on the total USD $1,278,907.05 awarded against Taleveras Group and Tadema from the date of the Judgment until the date of payment.

30. Despite due demand, Tadema/Taleveras Group refused or otherwise failed to pay any portion of the sums due to Plaintiffs under the Summary Judgment Order, and the entire amount of USD $1,278,907.05 plus post-judgment interest remained due and outstanding to Plaintiffs.

31. Following the issuance of the Summary Judgment Order, Norient, as agents for Baltic Soul (and also acting as agents for the owner of another vessel, *i.e.*, the M/T NORIENT SOLAR, which is also part of the aforesaid pooling agreement) entered into a Memorandum of Agreement with Tadema and Taleveras Group dated August 12, 2015. A true and correct copy of the Memorandum of Agreement is attached as **Exhibit 6**.

32. Pursuant to the Memorandum of Agreement, Norient agreed to not "create or permit to subsist any lien, encumbrance, security or any interest" over cargo to be loaded on board the M/T NORIENT SOLAR related to the English Summary Judgment Order in exchange for payment by Taleveras Group and/or Tadema to Plaintiffs in the sum of USD $450,000 in partial satisfaction of the freight due under the Charter Party as awarded pursuant to the Summary Judgment Order.

33. On September 4, 2015, Taleveras BV remitted the sum of USD $450,000 despite the fact that Tadema and Taleveras Group were Plaintiffs' counterparties under both the Charter Party and Agreement, and the Summary Judgment Order had been entered only against Tadema

and Taleveras Group. A redacted copy of the SWIFT confirmation of the payment made by Taleveras BV is attached as **Exhibit 7**.

34. The USD $450,000 payment made by Taleveras BV reduced the sum due and owing by Tadema and Taleveras Group to Plaintiffs to USD $852,132.00 (USD $1,278,907.05 owed under the Summary Judgment Order plus post-judgment interest of $23,224.95 at 8% for the period June 11, 2015 to September 3, 2015, less the $450,000 paid) as of September 4, 2015.

35. No other portion of the sums remaining due under the Charter Party, Settlement Agreement and/or Summary Judgment Order have been paid by Tadema or Taleveras Group.

**B. The English Summary Judgment Order Should be Recognized as a Judgment of this Court.**

36. The English Summary Judgment Order is a final, conclusive and enforceable judgment, its enforcement has not been stayed and yet, despite due demand, and in violation of the English High Court of Justice judgment, the amounts awarded to Plaintiffs remain due and owing.

37. The English Judgment is entitled to recognition and enforcement pursuant to the Foreign Country Money-Judgment Recognition Act, as: the judgment was rendered under a system which provide impartial tribunals and procedures compatible with the requirements of due process; the foreign country court exercised personal jurisdiction over Tadema and Taleveras; the foreign country court had jurisdiction over the subject matter; and none of the other bases for non-recognition are applicable here.

38. Plaintiffs therefore seek an order and judgment affording recognition and enforcement of the Summary Judgment Order.

C. **Defendants' Alter Ego Relationship.**

### Gross Undercapitalization

39. Tadema and Taleveras BV are presently the subject of applications for their liquidation in the British Virgin Islands, where they are incorporated.

40. Evident from their pending liquidations and inability to pay the Summary Judgment Order, Tadema, Taleveras Group, Taleveras BV and Taleveras DMCC are grossly undercapitalized, despite their control by and through a business enterprise, which presents itself as the "Taleveras Group," owned and controlled as set out herein by Sanomi.

41. There are at least three other judgments against Tadema/Taleveras issued by the U.K. High Court which also remain unsatisfied and confirm the gross under-capitalization of Defendants. Efforts to enforce those English judgments are pending in the Southern District of New York and District of Delaware.

### Siphoning of Funds from Debtor Corporations by the Dominant Stockholder

42. Each of these judgments, including Plaintiffs' against Tadema here, stems from a vessel charter undertaken by Tadema/Taleveras which failed to pay the remaining amount of freight and other sums due following delivery of the cargo and partial payment having been made by Tadema or another company comprising the Taleveras Group, including Taleveras BV.

43. "Taleveras Group" traded over 100 million barrels of crude oil as well as several million tons of gasoline, LPG and jet fuel annually, including through Tadema and Taleveras BV, until the "Group" grossly undercapitalized them.

44. On information and belief, Tadema, Taleveras BV, and Taleveras DMCC are subsidiaries of, and otherwise owned, operated, and controlled by, Sanomi and/or his Taleveras Group.

45.   On information and belief, Tadema, Taleveras BV, and Taleveras DMCC share common ownership, directors, and/or management and are otherwise controlled by the same person: Sanomi.

46.   Sanomi is the founder, chairman, and/or CEO of the Taleveras Group. Sanomi and his Taleveras Group are certainly capable of capitalizing Tadema and Taleveras BV, but upon information and belief they have intentionally under-capitalized them and instead, without consideration, transferred the business of Tadema and Taleveras BV to Taleveras DMCC. For example, Forbes Magazine reported (January 6, 2015, *Nigerian Multi-Millionaire Oil Tycoon Igho Sanomi II To Build Giant African Oil Storage Terminal*)[1], that

> Taleveras Group is one of the leading suppliers of crude oil and refined petroleum products in West Africa. The company was founded in 2004 in Nigeria by Igho Sanomi II as an energy trading company; it has more than $2 billion in credit lines and trades over 100 million barrels of crude oil as well as several million tons of gasoline, LPG and jet fuel annually. Taleveras has offices in London, Geneva, Abuja, Lagos, Abidjan, Cape Town and Dubai.

VenturesAfrica Magazine (July, 2013, *10 Nigerian Billionaires You've Never Heard Of*)[2] similarly reports that:

> Sanomi II, 38, is the founder and CEO of Taleveras Group, a Nigerian energy, power and construction conglomerate. Taleveras is one of Africa's largest energy trading companies, trading close to a billion barrels of crude oil and millions of tons of condensates, gasoline, jet fuel, condensates and LPG every year.
>
> Taleveras also owns substantial stakes in two oil blocks in Nigeria as well as lucrative production sharing contracts (PSCs) in three offshore oil blocks in Ivory Coast. The group Power subsidiary constructs electrical substations in Nigeria and recently acquired a majority stake in the Port Harcourt Electricity Distribution Company.
>
> Taleveras has an annual turnover of several billions of dollars. Igho Sanomi II is the controlling shareholder of the group.

---

[1]   http://www.forbes.com/sites/mfonobongnsehe/2015/01/06/nigerian-multi-millionaire-oil-tycoon-igho-sanomi-to-build-giant-african-oil-storage-terminal/#697e8c9365ce

[2]   http://venturesafrica.com/10-nigerian-billionaires-youve-never-heard-of/

29. In support of Taleveras BV's re-domiciling from the British West Indies to the British Virgin Islands, Sanomi provided a sworn affidavit identifying himself as a director of Taleveras BV, a copy of which is attached as **Exhibit 8**.

47. In further support of Taleveras BV's re-domiciling, a corporate resolution was issued in which Sanomi and several others are identified as directors of Taleveras BV, a copy of which is attached as **Exhibit 9**.

### Non-functioning of Officers and Directors

48. Among the other named directors is an individual named Dickens Ogheneruemu Patrick Sanomi, who – on information and belief – is the late father of Sanomi. On information and belief, Mr. Patrick Sanomi was deceased long before the August 26, 2015 resolution was executed over his alleged signature.

49. In support of Tadema's re-domiciling from the British West Indies to the British Virgin Islands, a corporate resolution was issued in which Taleveras BV is identified as a director of Tadema, a copy of which is attached as **Exhibit 10**.

50. At or about the time Taleveras BV was re-domiciling itself and before the winding up and insolvency proceedings were commenced in the British West Indies and the British Virgin Islands, respectively, Taleveras BV began using the address of Taleveras DMCC on bills of lading where Taleveras BV is identified as the shipper.

### Absence of Corporate Records

51. On information and belief, the purpose behind the re-domiciling moves by Tadema and Taleveras BV from the British West Indies to the British Virgin Islands was to evade their respective creditors and seek more favorable insolvency protections.

52. Taleveras DMCC, as well as Tadema and Taleveras BV, operate in jurisdictions where disclosure of corporate information such as the identities of officers, directors and shareholders is not required, allowing operation out of the public eye. The Emirates (UAE) and British Virgin Islands (BVI) are among the handful of jurisdictions with the least transparency and greatest corporate secrecy. For UAE companies such as Taleveras DMCC, information about the company's owners is not public and cannot be disclosed; no information is required about the shareholders of companies to be recorded in the central, publicly accessible, companies registry; no balance sheets are to be published in the central, publicly accessible, companies registry; and there is no requirement on beneficiaries of non-resident companies to which the UAE makes payments or transfers. BVI incorporation law is similar, allowing owners of companies to hide behind "nominees" to achieve secrecy and to avoid disclosure of ownership, capitalization and banking relationships.

53. On information and belief, the Taleveras Group owns and controls 100% of Taleveras DMCC.

54. On information and belief, Tadema, Taleveras BV, and Taleveras DMCC (all of which are under the direction and control of Sanomi) are the same company for all intents and purposes and simply operate under different trading names. The Business Directory of the Dubai Multi Commodities Center ("DMCC," http://www.dmcc.ae/business-directory ) as of August 4, 2016 listed the address of "Taleveras Petroleum Trading DMCC" to be at "Unit No. 1104-18, Reef Tower, Jumeriah Lakes Towers, Dubai UAE." It also listed "Taleveras Petroleum Trading BV (DMCC Branch)" at the very same address.

<b><u>Failure to Observe Corporate Formalities</u></b>

55. **<u>Tadema, Taleveras BV and Taleveras DMCC Are Merely Facades for the Operations of the Dominant Stockholder, Taleveras Group</u>**: Taleveras Group holds itself out

as a single business entity and in all aspects of the business the Tadema and Taleveras corporations actually functioned as a single entity. The "Taleveras" Linkedin profile (with a similar description at its website, http://www.taleveras.com/about/) describes Taleveras as follows:

      Taleveras, a Global Energy and Services Company, was created in 2004 when the founder and current Chairman and Chief Executive Officer, Igho Charles Sanomi II completed the merger of several existing businesses. Today Taleveras Group offers a wide range of integrated and strategic solutions in fields such as energy, power, construction, and logistics on a global scale.

      Our energy activities are centered on the physical sourcing and marketing of oil on a worldwide scale. We are proud of our high level of professionalism in handling the finance, logistics, operations and risk management activities associated with this business. Taleveras also pursues upstream activities with a major focus on acquiring drilling rights for viable, proven oil reserves.

      Emails sent to and received from those of the "Group" also have the common @taleveras.com domain, which by information and belief is owned and paid for by the "Group" rather than any other distinct entity. On the "who is" register, the ownership of the Taleveras.com domain is intentionally concealed by further registration with "WHOISGUARD, INC.," Panama.

      56.    The Taleveras Group website also lists (http://www.taleveras.com/contact/our-locations), without any distinction as to which entity or subsidiary is located there, "our locations" identifying offices in Geneva, Lagos, Dubai, Abidjan, London, Abuja and Cape Town. Significantly, no address is/was listed for the British Virgin Islands, where Taleveras BV supposedly operates.

      57.    On information and belief, the operations and businesses of Tadema and Taleveras BV were taken over by Taleveras DMCC. Import records show that, until September 30, 2015, Taleveras BV was the shipper of thousands of barrels of petroleum products to

consignees in the United States including Chevron, Atlantic Trading and Marketing, BP North America Petroleum, Vitol, George E. Warren Corporation, PBF Holdings, and the other garnishees named in this action. A true and correct copy of the import records is attached as **Exhibit 11**.

58. The import records show that beginning on or about December 21, 2015 and continuing to the present, the shipper was changed to Taleveras DMCC – but the product and consignees remain unchanged.

59. Taleveras BV, as indicated by U.S. import records, ceased doing active business in September 2015. It had maintained a bank account at Deutsche Bank. After ceasing to do business, however, funds continued to move through the Taleveras BV account, to pay for shipments supposedly involving the newly-created or activated "Taleveras DMCC." The wires sent through the "Taleveras BV" account at Deutsche Bank involved the following:

| | | |
|---|---|---|
| 3-Dec-15 | GLENCORE LTD | STAMFORD, CT |
| 29-Dec-15 | ATLANTIC TRADING AND MARKETING INC | HOUSTON, TX |
| 8-Jan-16 | ATLANTIC TRADING AND MARKETING INC | HOUSTON, TX |
| 29-Jan-16 | ATLANTIC TRADING AND MARKETING INC | HOUSTON, TX |
| 4-Feb-16 | GEORGE E. WARREN CORPORATION | VERO BEACH, FL |
| 4-Feb-16 | ATLANTIC TRADING AND MARKETING INC | HOUSTON, TX |

These cargoes at issue, however, were apparently for the account of "DMCC", as follows:

```
Consignee:    TO ORDER ING BELGIUM BRUSSELS
Shipper:      TALEVERAS PETROLEUM TRADING DMCC
Arrival Date: 1/27/2016
Notify Party: GEORGE E WARREN CORPORATION

Consignee:    ATLANTIC TRADING AND MARKETING INC
```

    Shipper          TALEVERAS PETROLEUM TRADING DMCC
    Arrival Date:    12/21/2015
    Notify Party:    GULF OIL LP

    Consignee:     ATLANTIC TRADING AND MARKETING INC
    Shipper:       TALEVERAS PETROLEUM TRADING DMCC
    Arrival Date:    12/21/2015
    Notify Party:    KOCH SUPPLY & TRADING LP

    Consignee:     ATLANTIC TRADING AND MARKETING INC
    Shipper:       TALEVERAS PETROLEUM TRADING DMCC
    Arrival Date:    12/21/2015
    Notify Party:    ATLANTIC TRADING AN MARKETING INC

60. Further to this point, information obtained from one of Tadema/Taleveras' banks in conjunction with the M/T NORIENT SOLAR charter party revealed: "Taleveras Petroleum Trading DMCC is part of the Taleveras group. It is a new trading entity that will replace Taleveras Petroleum Trading BV. Even though there is no direct capital link between both, they are owned by the same shareholders....Please rest assured that the transaction remains linked to the Taleveras group." A copy of this email chain is attached as **Exhibit 12**.

61. Upon information and belief, Taleveras DMCC offered no consideration to Tadema or Taleveras BV for the acquisition of their businesses and customers. Shipment records show that as early as August, 2014, shipments of crude oil for "Televeras [sic] Petroleum Trading BV" were addressed "Care Off [sic]" "Taleveras Petroleum Trading DMCC."

62. On information and belief, Taleveras DMCC as the alter ego of Tadema and Taleveras BV has continued the operations of Tadema and Taleveras BV following the termination of their corporate registration in Anguilla. The Anguilla registration was terminated, by information and belief, to thwart creditors and escape service of process.

63. Records of the United Bank of Africa, **Exhibit 13** hereto, confirm that, as directed by Sanomi, "Chief Executive Officer" of "Taleveras Group," money was regularly passed to and

from various accounts of the "Group" to those in the names of other "Group" member companies, with neither observation of corporate form nor apparent consideration. Such records confirm that the "Taleveras Group" failed to observe corporate form and show that funds regularly were passed between "Group" members without consideration. The "Group" has abused the corporate forms of its "members" akin to fraud, namely by passing funds and customers from one member to the other without consideration, all of which was performed, upon information and belief, at the direction of Sanomi.

### Count I: Maritime Attachment and Garnishment under Rule B

64. Plaintiffs seek issuance of Process of Maritime Attachment and Garnishment so that they may obtain security for their claims against Tadema, Taleveras Group, Taleveras BV and Taleveras DMCC, none of which, or anyone acting on their behalf including Mr. Sanomi, have paid or provided security in response to Plaintiffs' multiple and continued demands.

65. Tadema, Taleveras Group, Taleveras BV, Taleveras DMCC, and Sanomi cannot be found within this district within the meaning of Rule B, but are believed to have, or will have during the pendency of this action, property and/or assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of Garnishees in this District.

66. The total amount to be attached as security for Plaintiffs' claims totals USD $1,272,607.98. This figure is calculated as follows:

A. USD $852,132.00 being the sum due under the Summary Judgment Order (USD $1,288,902.49, plus post-judgment interest at 8% in the amount of USD $23,224.95 (for the period June 11, 2015 to September 3, 2015), less the USD $450,000 paid).

B.  Post-judgment interest in the amount of USD $71,579.09 for the period September 4, 2015 to September 23, 2016 calculated at the English statutory rate of 8% per annum on the USD $852,132.00 owed under the Summary Judgment Order.

C.  Post-judgment interest in the amount of USD $73,896.89 for a period of one additional year during which it is anticipated that this action will be litigated.

D.  Under Clause 2 of the March 5, 2015 Agreement Tadema and Taleveras Group agreed to pay Plaintiffs' legal costs incurred in pursuing the claim for all sums due under the Charter Party. Those costs currently total USD $225,000.00 and it is anticipated that additional legal costs in respect to this action will total USD $50,000.00.

**Count II: Attachment under 10 Del. C. § 3507**

67. Plaintiffs incorporate paragraphs 1-66 above as if fully set forth herein.

68. None of Defendants Tadema, Taleveras Group, Taleveras BV and Taleveras DMCC was created by or exists under the laws of Delaware.

69. Plaintiffs possess valid causes of action against Tadema and Taleveras Group for breach of the Charter Party and breach of the Agreement, both of which exceed USD $50, as well as a cause of action to enforce the English Summary Judgment Order. Plaintiffs also possess valid causes of action against Taleveras BV and Taleveras DMCC as alter-egos of Tadema/Taleveras Group for breach of the Charter Party and breach of the Settlement Agreement in amounts exceeding USD $50.

70. Plaintiffs are therefore entitled to a writ of foreign attachment against all goods, chattels, rights, credits, moneys, effects, lands, tenements, and debts of Defendants Tadema, Taleveras Group, Taleveras BV and Taleveras DMCC pursuant to Del. C. §§ 3507-3508.

WHEREFORE, Plaintiffs pray:

a. That process in due form of law according to the practice of this Court may issue against the Defendants, citing them to appear and answer the foregoing, failing which default may be taken;

b. That the English Summary Judgment Order be recognized and confirmed as a Judgment of this Court;

c. That if Defendants cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendants up to and including **$1,272,607.98** be restrained and attached, including, but not limited to any cargo, cash, funds, escrow funds, credits, debts, transfers, accounts and/or letters of credit, of, belonging to, due or for the benefit of Defendants in the hands of certain garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

d. That all tangible and intangible property of Defendants up to and including **$1,272,607.98** be restrained and attached, including, but not limited to any goods, chattels, rights, credits, moneys, effects, lands, debts and tenements, of, belonging to, due of for the benefit of Defendants in the hands of certain garnishees who may be served with a copy of the Writ of Attachment pursuant to 10 Del. C. § 3507;

e. That since it appears that the U.S. Marshal's Service lacks sufficient staff to effect service of Process of Maritime Attachment and Garnishment promptly or economically, and that since appointing a person over 18 years of age and who is not a party to this action will result in substantial economies in time and expense, such a person be appointed pursuant to FED. R. CIV. P. 4(c) to serve Process of Maritime Attachment and Garnishment in this action;

f. That upon attachment of the amount demanded, this Court retain jurisdiction over the matter through the entry of judgment of the pending claims including any appeals thereof, and for any further or supplemental proceedings as may be necessary; and

g. For such other, further and different relief as this Court may deem just and proper, including but not limited to a default with respect to any property seized in the event a timely response is not filed.

YOUNG CONAWAY STARGATT & TAYLOR LLP

/s/ Timothy Jay Houseal
_____
Timothy Jay Houseal (Del. Bar ID No. 2880)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6682
thouseal@ycst.com

*Attorneys for Plaintiffs*

OF COUNSEL:
Michael E. Unger, *pro hac vice* pending
Michael J. Dehart, *pro hac vice* pending
Freehill Hogan & Mahar LLP
80 Pine Street, 25th Floor
New York, NY 10005
Tel:   (212) 425-1900
Fax:   (212) 425-1901
unger@freehill.com
dehart@freehill.com

Dated: September 27, 2016